IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| LAVELLE HARKNESS,              )<br>               )<br>    Plaintiff       )<br>               )<br>vs.            )<br>               )<br>RAYMOND SOBINA, et al,       )<br>               )<br>    Defendants     ) | C.A.No. 09-29 Erie<br><br>District Judge McLaughlin<br><br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I      RECOMMENDATION**

It is respectfully recommended that the motion to dismiss the amended complaint by Defendants Lamb, Sherbine and Maxa [Document # 33] be granted.  The Clerk of Courts should be directed to terminate Defendants Lamb, Sherbine and Maxa as parties to this case.

By separate Order filed this date, the motion to dismiss the original complaint filed by Defendants Lamb, Sherbine and Maxa [Document # 24] and the motion to dismiss the original complaint filed by the Department of Corrections Defendants [Document # 27] are dismissed as moot in light of the filing of the amended complaint.


**II     REPORT**

   **A.     Relevant Procedural History**

Plaintiff, a state prisoner, brought this civil rights action under 42 U.S.C. § 1983 alleging that he received improper care and medical treatment following an accident in which a heavy steel door was shut on his foot. Originally named as Defendants were: Raymond Sobina, Warden; Michael Barone, Acting Warden; Christian Kennedy, Grievance Coordinator; Correctional Officer Weiland; Nurse Patricia Lamb; Dr. Rhonda Sherbine; Dr. Maxa; Dr.

1

Jammie Ferkarko (also listed as Dr. Jammie); and Dr. Skunda.

On July 24, 2009, Plaintiff filed an Amended Complaint adding Sharon Burks, of the Office of Grievances and Appeals, as a Defendant, and expanding upon the allegations of his Original Complaint. Document # 31.

Defendants Ferdarko, Burks, Jammie and Skunda have been dismissed from this action due to Plaintiff's failure to prosecute the case against them. See Documents # 42, 40.

Defendants Sobina, Barone, Kennedy, and Weiland (hereafter, the "Department of Corrections Defendants") are represented by the Office of the Attorney General and have filed a motion to dismiss against the Original Complaint and an answer to the Amended Complaint. Documents # 27, 41. Defendants Lamb, Sherbine, and Maxa (hereafter, the "Medical Defendants") are represented by private counsel and have filed a motion to dismiss the Original Complaint and a motion to dismiss the Amended Complaint. Documents # 24, 33. The filing of an amended complaint moots the motions to dismiss filed against the original complaint and so these motions will be dismissed by separate order.

Presently pending before this Court is the Motion to Dismiss the Amended Complaint filed by the Medical Defendants [Document # 33]. Despite being given the opportunity to do so, Plaintiff has not filed an opposition to that pending motion.


      **B.**      **The Allegations Against the Medical Defendants**

In his Amended Complaint, Plaintiff claims that following his injury on April 13, 2007, he was examined by Nurse Matt (who is not named as a party to this action) and informed that he would need stitches. Plaintiff was then seen by Defendant Patricia Lamb. According to Plaintiff, Defendant Lamb stitched his wound without sterilizing the area causing his foot to become infected with "verruca," a tumor of the skin.

In October of 2007, Plaintiff, after months of pain and suffering, had further surgery performed by Doctor Peter Go at Somerset Regional Hospital to correct Defendant Lamb's "negligence of deliberate indifference." The surgery consisted of cutting out all the infected

2

tissue and Plaintiff received eleven stitches.

After Plaintiff's return to SCI Forest, he was not admitted into the infirmary as Dr. Go ordered, but was instead forced to walk from his cell to the cafeteria and the medical department several times per day.  Plaintiff alleges that he contacted Defendants Lamb, Sherbine and Maxa in this regard, but they refused to admit him into the infirmary.  Plaintiff alleges that as a result, his wound did not heal properly and he was forced to undergo another surgery on February 12, 2008.  Plaintiff claims that he now walks with a limp as a result of Defendants' actions.

### C.     Standards of Review

#### 1.     *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

2.	**Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. Aug. 245, 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210-11(3d Cir. 2009).

### D. The Prison Litigation Reform Act

Defendants argue that Plaintiff has failed to exhaust his administrative remedies in accordance with the requirements of the PLRA.

#### 1. The Exhaustion Requirement

The Medical Defendants argue that the claims against them should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[1] (emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the

---

[1] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis

Plaintiff's own allegations confirm that he has not fully and properly exhausted his

administrative remedies in accordance with the PLRA.  However, Plaintiff's Amended Complaint is full of allegations that he was hindered in his ability to utilize the administrative remedy process.  The Medical Defendants argue that the allegations as to interference with the grievance process do not appear to be directed toward them, and so because they did not interfere with the process, they should be able to take advantage of Plaintiff's failure to exhaust.  This Court disagrees.

The Third Circuit has invariably held that interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process.  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." ).  See also Berry v. Klem, 283 Fed. Appx. 1, 5 (3d Cir. March 20, 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance.  While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never "available" to Brown within the meaning of 42 U.S.C. § 1997e.").

In this case, there are several allegations that the administrative remedy process was not available to Plaintiff.  It is of no moment to this Court that the Medical Defendants were not the individuals who allegedly hindered or thwarted Plaintiff's efforts to exhaust.  This Court will not permit the Medical Defendants to legally benefit from the alleged bad acts of the Department of Corrections Defendants.

### E. Deliberate indifference under the Eighth Amendment

Next, Defendants argue for the dismissal of this case based upon Plaintiff's failure to state a claim of deliberate indifference under the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A plaintiff must show that prison officials had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Specifically, deliberate indifference requires the demonstration that prison officials knew of an excessive risk to an inmate's health or safety and affirmatively disregarded that risk. Id. at 837-38. See also Doe v. New Jersey Dept. of Corrections, 337 Fed. Appx. 220, 226 (3d Cir. July 8, 2009) ("it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference for purposes of an Eighth Amendment claim entitled to remedy under § 1983.").

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from

9

receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment").

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Plaintiff's own complaint reflects that he was medically evaluated and treated within a short period of time immediately following his injury and was continually medically treated thereafter. Plaintiff received "some level of medical care," but he disagrees with the treatment and questions the quality of the care. The case law is clear that such a disagreement does not rise to the level of a constitutional violation. Plaintiff's allegation that the Medical Defendants denied him admission into the infirmary also fails under the Eighth Amendment. See Gause v. DiGuglielmo, 339 Fed.Appx. 132, 135 (3d Cir. July 15, 2009) ("His claim against the reviewing doctors amounts to no more than dissatisfaction with their denial of his request for infirmary housing and meals in his cell. This claim falls short of the standard for 'deliberate indifference.'").

Plaintiff's allegations fail to state a claim of deliberate indifference under the Eighth Amendment against the Medical Defendants. Accordingly, the motion to dismiss should be granted and these Defendants should be terminated as parties to this case.

**III    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the motion to dismiss the amended complaint by Defendants Lamb, Sherbine and Maxa [Document # 33] be granted. The Clerk of Courts should be directed to terminate Defendants Lamb, Sherbine and Maxa as parties to this case.

By separate Order filed this date, the motion to dismiss the original complaint filed by Defendants Lamb, Sherbine and Maxa [Document # 24] and the motion to dismiss the original complaint filed by the Department of Corrections Defendants [Document # 27] are dismissed as moot in light of the filing of the amended complaint.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                          S/ Susan Paradise Baxter
                          SUSAN PARADISE BAXTER
                          United States Magistrate Judge

Dated: February 11, 2010